**Marcus HALICZER, d/b/a Noveltex Products Co.**

v.

**The UNITED STATES.**

No. 13–61.

United States Court of Claims.

Feb. 18, 1966.

■■■■■■

———◆———

Samuel L. Davidson, Washington, D. C., attorney of record, for plaintiff; Donald A. Kaul, Herbert J. Jacobi and Marvin R. Stern, Washington, D. C., of counsel.

Louise O'Neil, St. Paul, Minn., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM: *

This is a patent suit filed under the provisions of 28 U.S.C. § 1498 for the recovery of reasonable and entire compensation for unlicensed use by the United States of the invention disclosed and claimed in U.S. Letters Patent No. 2,752,-916, issued to plaintiff on July 3, 1956, upon application filed October 28, 1953, and in U.S. Reissue Patent No. 24,549, issued to plaintiff on October 14, 1958, upon application filed June 30, 1958. The parties have agreed at pretrial that the issues of validity and infringement of the patents in suit should be first determined and that any accounting issues should be deferred until resolution of the liability issues. Plaintiff is a citizen of the United States, residing in the State of New York, and doing business there as the Noveltex Products Co. Plaintiff was the sole owner of the original patent during its entire life, and he is now, and has been at all times, the sole owner of the reissue patent.

The patents in suit disclose a disposable accordion-folded paper face mask of the type used for preventing the spread of respiratory infections. The original patent contained four claims, all of which define a face mask constructed of a single blank pleated material having scalloped side edges. These four claims are restated exactly in the reissue patent, which contains two additional claims, similar to the first four, but broader in scope and coverage, and devoid of all mention of the feature of scalloped side edges.

The present suit is based upon the alleged use of plaintiff's invention by the Government in procuring, from various suppliers who were in competition with plaintiff, face masks substantially similar to those illustrated and described in the two patents but not having scalloped side edges. The face masks supplied are charged with infringement of claims 5 and 6 of the reissue patent by reason of the fact that these two claims are directly and literally readable upon the accused devices, and infringement of claims 1 through 4 of the original and reissue patents by reference to the doctrine of equivalents, i. e., that though these claims do not read exactly upon the accused devices, they should be interpreted so as to embrace a reasonable range of equivalent structures.

Defendant has advanced a number of defenses to the charges of infringement, asserting: (1) that the claims of both patents are invalid because they were fully anticipated by the prior art; (2) that claims 5 and 6 of the reissue patent are invalid for the additional reason that they claim elements deliberately abandoned by plaintiff in his application for the original patent; (3) that even if claims 1 through 4 of the original and reissue patents are valid, plaintiff is estopped in light of the file wrapper history to allege that they read upon the accused structures; (4) that even if claims 5 and 6 of the reissue patent are valid, plaintiff has acquiesced in defendant's purchase of face masks from others, and that this action amounts to an implied license to use and continue to use the allegedly infringing devices; and (5) moreover, that claims 5 and 6 of the reissue patent could not be said to have been infringed in any case, because the face masks upon which these claims are readable were in public use, and on sale, prior to the time plain-

---

* This opinion incorporates, with minor changes and some added discussion, the opinion prepared, at the direction of the court, by Trial Commissioner Donald E. Lane.

tiff filed his application for the reissue patent.

On October 28, 1953, plaintiff filed his application for the original patent on the disposable face mask. The drawing which accompanied the application illustrated a single blank of pleated material having scalloped side edges (fig. 5), although plaintiff stated in his specifications that alternatively straight side edges could be provided. Eleven claims were originally filed with the application, none of which recited the limitation of scalloped edges, but described merely "a face mask comprising a body folded upon itself to define therein a plurality of superimposed panels spreadable to cover a selected portion of the wearer's face when opened." All 11 of these original claims were rejected by the Patent Office examiner as having been anticipated by prior patents, namely: *Dehne,* 1,526,422, February 17, 1925, disclosing a hat protector; *Samuel,* 2,172,355, September 12, 1939, disclosing a bandage protector; and *Societe,* French Patent 860,976, disclosing a head covering. The examiner noted that all the individual features claimed by plaintiff are found in these three prior patents, which demonstrated that it was old: (a) to have accordion-folded pleats; (b) to make the end folds of the structure wider than the others in order to provide a finger hold for unfolding the device; (c) to have tying cords fastened to the ends of the folded body; and (d) to use staples or elastic tying cords.

After the rejection by the Patent Office examiner, plaintiff canceled his original 11 claims and substituted therefor 7 claims which included a recital of "scalloped side edges to impart a transversely curved configuration to the ends of the mask." Plaintiff stated in his remarks accompanying the revised claims (see finding 10) that the inclusion of this feature of scalloped edges made his device singularly adaptable for a face mask, rather than the hat protector disclosed in the *Dehne* patent. Three of these revised claims were rejected for lack of invention, but the other four submitted were eventually approved, with minor modifications,

and appear now as patent claims 1–4 of Patent 2,752,916, and of Reissue Patent 24,549.

The application file establishes that the only improvement over the prior art demonstrated to the satisfaction of the Patent Office examiner was the provision for *scalloped edges,* since the other features described in claims 1 to 4 as allowed were specifically noted by the examiner as having been disclosed by the earlier patents cited. It was on the basis of the inclusion of this feature that the patent was issued to plaintiff on July 3, 1956.

On June 30, 1958, just less than 2 years after issuance of the original patent, plaintiff filed an application for a reissue patent in order to obtain broader coverage for his invention, asserting that through the inadvertence of his attorney, he had in good faith neglected to claim all the protection to which he was originally entitled. With the reissue application, plaintiff included his original four claims, and in addition filed two new claims which broadened the scope of the original four claims, *inter alia,* by deleting the specific limitation of scalloped edges. Despite the fact that the examiner had rejected plaintiff's 11 original application claims which were substantially similar in scope to the 2 new reissue claims and had approved the inclusion of a recital of scalloped side edges, and despite the fact that plaintiff acquiesced in this decision by abandoning the original 11 claims, the examiner now inexplicably approved the 2 new reissue claims, and granted the reissue patent including them, on October 14, 1958.

Plaintiff and others began supplying the Government with disposable paper face masks for use in Public Health Service hospitals as early as 1956. Although the Government discontinued dealing with plaintiff in 1961, it continued to purchase face masks from other suppliers. Plaintiff still makes such masks, supplying them to well-known pharmaceutical companies and hospitals. At no time, however, has defendant either ordered or used masks having scalloped side edges; and, in fact, plaintiff himself has never

marketed masks containing this feature. All the masks which defendant has purchased, and which plaintiff and others have manufactured possess straight side edges. The broad language of claims 5 and 6 of plaintiff's reissue patent is conceded to be directly readable upon the masks purchased by defendant; and claims 1 to 4 of plaintiff's original and reissue patents would also be readable upon these accused devices if it were not for the specific limitation of scalloped edges which is contained in these claims.

■ Plaintiff contends that the feature of scalloped side edges is merely a collateral element of design, and not a necessary factor affecting functions, but the Patent Office examiner in fact issued a patent to plaintiff on the specific ground that this feature distinguished his invention over the prior art. Although the correctness of this decision may be open to serious question, the examiner is conceded to possess a certain amount of expertness, and the issuance of a patent is presumptive evidence of its validity. 35 U.S.C. § 282; Williams Mfg. Co. v. United Shoe Mach. Corp., 121 F.2d 273, 277 (6th Cir. 1941), aff'd, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942); Hazeltine Research, Inc. v. Avco Mfg. Corp., 227 F.2d 137 (7th Cir. 1955), cert. denied, 350 U.S. 987, 76 S.Ct. 474, 100 L.Ed. 854 (1956). We need not decide, however, whether the four claims of the original patent, No. 2,752,916 are actually valid. Even though we assume *arguendo* that these four claims (and claims 1–4 of the reissue) are valid, plaintiff may not urge that they read upon the face masks purchased by defendant. The Patent Office examiner regarded the element of scalloped side edges as the central feature of plaintiff's invention, and rejected the application claims which did not include this element. In response to these rejections, plaintiff amended his application by canceling his original broad claims and introducing the limiting element of scalloped side edges into his revised claims. Plaintiff is bound by this limitation which the examiner approved, and he himself asserted, in order to obtain issuance of the patent.[1] Therefore, the scope of claims 1–4 must be limited to include only those devices containing the feature of scalloped side edges, emphasized by the file wrapper as the distinguishing characteristic of plaintiff's original patent. Alma Motor Co. v. United States, 134 F.Supp. 659, 133 Ct.Cl. 91 (1955).

■■ A patent is normally entitled to embrace a reasonable range of equivalent structures, but it is not entitled to such a range of equivalents as would in effect recapture elements purposely surrendered by the applicant to avoid the prior art. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736 (1942); Straussler v. United States, 290 F.2d 827, 154 Ct.Cl. 275 (1961). The

---

1. Plaintiff contends that the court cannot take account of the arguments made by his prior attorney to the examiner; for this proposition plaintiff cites a series of cases in the Second Circuit. A. G. Spalding & Bros. v. John Wanamaker, New York, 256 F. 530 (2d Cir. 1919); Catalin Corp. of America v. Catalazuli Mfg. Co., 79 F.2d 593 (2d Cir. 1935); Katz v. Horni Signal Mfg. Co., 145 F.2d 961 (2d Cir. 1944) cert. denied, 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432; Van Der Horst Corp. of America v. Chromium Corp. of America, 98 F.Supp. 412 (S.D. N.Y.1951); Zenith Radio Corp. v. Lehman, 121 F.Supp. 69, 73 (S.D.N.Y. 1954), aff'd 2 Cir., 217 F.2d 954. As we understand the Second Circuit position, it does not preclude a court from considering such arguments of a patent-claimant with relation to the issue of estoppel involved here, *i. e.* in determining whether the claimant deliberately gave up certain claims rejected by the examiner in order to induce the latter to issue a patent. See Westinghouse Electric & Manufacturing Co. v. Condit Elec. Mfg. Co., 194 F. 427, 430 (2d Cir. 1911); Auto Pneumatic Action Co. v. Kindler & Collins, 247 F. 323, 328 (2d Cir. 1917); A. G. Spalding & Bros. v. John Wanamaker, New York, supra, 256 F. at 533; Catalin Corp. of America v. Catalazuli Mfg. Co., 79 F.2d at 594; Katz v. Horni Signal Mfg. Co., supra, 145 F.2d at 963; Van Der Horst Corp. of America v. Chromium Corp. of America, supra, 98 F.Supp. at 420.

revised claims, as approved by the Patent Office, must be interpreted with reference to the original claims which had been rejected by the examiner and canceled by the applicant. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Morpul, Inc. v. Glen Raven Knitting Mill, Inc., 238 F.Supp. 520 (D.C.N.C., 1965). Plaintiff may not here take a position inconsistent with the one he maintained before the Patent Office in the proceedings which led to the issuance of the patent, and he cannot be heard to assert by reference to the doctrine of equivalents that the broad language previously disclaimed and abandoned may now be restored. Straussler v. United States, supra; Smith v. Magic City Kennel Club, 282 U.S. 784, 790, 51 S.Ct. 291, 75 L.Ed. 707 (1931). Because the face masks supplied to the Government all had straight sides edges, and claims 1 to 4 of the original and reissue patents are limited to structures having scalloped side edges, the accused devices do not fall within the scope of interpretation that may be accorded these claims. Consequently, there has been no infringement by defendant of claims 1 through 4 of the original and reissue patents.

■■ Likewise, it is evident that the deliberate cancellation of claims in order to obtain a patent constitutes a bar to obtaining these same claims by inclusion in a reissue patent. Dobson v. Lees, 137 U.S. 258, 11 S.Ct. 71, 34 L.Ed. 652 (1890); Application of Byers, 230 F.2d 451, 43 CCPA, Patents, 803 (1956). The 11 claims which were presented during the prosecution of the application for the original patent corresponded very closely in language, and almost exactly in scope, to claims 5 and 6 of the reissue patent. As was noted previously, the Patent Office examiner originally rejected these claims, and in response to this rejection plaintiff conceded the unpatentability of the subject matter claimed therein by specifically canceling all 11 claims, and submitting instead 7 claims narrower in scope. This deliberate withdrawal or amendment of claims in order to obtain

the original patent cannot be said to involve the inadvertence or mistake contemplated by 35 U.S.C. § 251, and is not an error of the kind which will justify the granting of a reissue patent which includes the matter withdrawn. Dobson v. Lees, supra; Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 492, 55 S.Ct. 455, 79 L.Ed. 1005 (1935); Application of Byers, supra; Riley v. Broadway-Hale Stores, Inc., 217 F.2d 530 (9th Cir. 1954). The Supreme Court's decision in Morey v. Lockwood, 75 U.S. (8 Wall.) 230, 19 L.Ed. 339 (1868), on which plaintiff relies, was quite different. In that case the Patent Office itself had led the inventors into the error by originally insisting (and wrongly) on the very provision which was later changed in the reissued patent (see id. at 232–233, 241). Here, plaintiff himself, not the Patent Office, proffered scalloped edges as the distinguishing feature; the Office did not lead plaintiff into any error.

■ A reissue patent is not vitiated simply because its claims are broader than those of the original patent; however, particular language which would have defeated the original patent claims cannot subsequently be allowed on reissue. Plaintiff's acquiescence in the rejection of his original claims, and his acceptance of a patent which contained the limitation of scalloped side edges is evidence of the fact that he elected to cancel his claim to face masks having straight side edges. Therefore, the reissue patent cannot be permitted to enlarge the claims of the original letters patent by including this broad language of claims 5 and 6 which was previously intentionally withdrawn by plaintiff. Dobson v. Lees, supra; Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., supra; Richmond Engineering Co. v. Bowser, Inc., 264 F.2d 595 (4th Cir. 1959); Application of Byers, supra; Riley v. Broadway-Hale Stores, Inc., supra. The unexplained allowance of claims 5 and 6 of the reissue patent by the Patent Office examiner, in light of the file history of the original patent and the prior art, was

manifestly wrong, and these claims must be found to be invalid.

 In summary, the court concludes that claims 1 through 4 of U.S. Letters Patent No. 2,752,916 and of U.S. Reissue Patent No. 24,549 have not been infringed by the straight-edged disposable face masks procured or used by defendant. Claims 5 and 6 of U.S. Reissue Patent No. 24,549 are invalid because the cancellation of similar claims in plaintiff's original patent did not involve "error" within the meaning of 35 U.S.C. § 251. Plaintiff is not entitled to recover and his petition must be dismissed.